AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

A CELLULAR DEVICE MORE FULLY DESCRIBED IN
ATTACHMENT A

Case No. **1:22-MJ-00174**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
**See Attachment A.**

located in the **Southern** District of **Ohio** , there is now concealed *(identify the person or describe the property to be seized)*:
**See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 841(a)(1) | Narcotics Conspiracy |

The application is based on these facts:
**See attached affidavit**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

**Brett Stratmann, ATF TFO**
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
**FaceTime** *(specify reliable electronic means).*

Date: **Mar 21, 2022**

*Judge's signature*

City and state: **Cincinnati, Ohio**

**Hon. Stephanie K. Bowman, U.S. Magistrate Judge**
*Printed name and title*

**ATTACHMENT A**

The property to be searched is a blue iPhone cellular device with a black case currently located at

the ATF Cincinnati Field Office, 550 Main Street, Room 8-491 and is tagged as item #000023.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the

electronically stored information described in Attachment B.

## ATTACHMENT B

1.    All records on the **SUBJECT DEVICE** described in Attachment A that relate to violations of 21 U.S.C. §§ 846 and 841(a)(1) (Narcotics Conspiracy) involving Arik SMITH and other yet known and unknown individuals including:

   a.  Evidence that shows the **SUBJECT DEVICE** was used to further facilitate the distribution of illegal narcotics; lists of customers and related identifying information; types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   b.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   c.  any information recording schedules or travel;

   d.  any and all stored telephone numbers;

   e.  any and all text messages, to include incoming, outgoing, saved, deleted, and drafts;

   f.  Any and all emails, sent, received, delete, draft and/or saved;

   g.  any and all voicemails;

   h.  any and all photographs, electronic images, video recordings, and/or images saved and/or deleted on the cellular device;

   i.  Any and all data retrieved from Apps on the device;

   j.  any and all entries made in a calendar and/or notebook feature;

   k.  any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID, and or IMSI.

2.    Evidence of user attribution showing who used or owned the **SUBJECT**

1

**DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEARCH OF

A BLUE I PHONE CELLULAR DEVICE
WITH A BLACK CASE HELD IN ATF
PROPERTY AS ITEM #000023

CURRENTLY LOCATED AT ATF
CINCINNATI FIELD OFFICE, LOCATED
AT 550 MAIN STREET, CINCINNATI
OHIO 45202

Case No. __**1:22-MJ-00174**__

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Brett Stratmann, Task Force Officer (TFO), Alcohol, Tobacco, Firearms, and Explosives

("ATF"), being duly sworn, deposes and states the following:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of

Criminal Procedure for a search warrant authorizing the examination of property—electronic

devices—which are currently in law enforcement possession, and the extraction from that property

of electronically stored information described in Attachment B.

2.      I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF) assigned to the Organized Crime Investigative Squad of the Intelligence Unit of

the Cincinnati Police Department (CPD) since 2014.  I have been a police officer with the CPD

for more than 25 years.  I have conducted and participated in numerous drug trafficking

investigations, illegal use of firearm investigations that were related to murders and felonious

assaults, and money laundering investigations during my career, which have resulted in the drug

and gun seizures, seizures of large amounts of drug proceeds in the form of U.S. currency, arrests of suspects, their prosecution, and conviction. I have participated in numerous interviews of individuals involved in the distribution, transportation, and sales of controlled substances, which included discussions regarding how those organizations operate.

3.     Because of this experience, I am familiar with the day-to-day operations of distributors and transporters of controlled substances. I am aware that drug traffickers often communicate with their customers, couriers, and/or associates with cellular telephones, or use of multiple telephones or other devices, to avoid detection by law enforcement. I am aware that individuals involved in the illicit distribution of controlled substances nearly always tend to conceal their identities as well as the locations where they live and where drug transactions take place. These individuals are also known to have vehicles, properties, businesses, utilities, and other purchases in the names of other people to conceal their financial transactions and any other association with their drug trafficking activity.

4.     Based on my training and experience, I know that drug dealers will often acquire assets and register these assets (including but not limited to cell phones, mobile devices, and/or vehicles) in fictitious names or the names of associates to disguise their ownership. I have also participated in numerous interviews of individuals involved in the illegal possession of firearms. I have participated in the investigation of the offenses referred to above and have reviewed ATF reports and reports prepared by other law enforcement agencies. I have also been involved with the analysis of pen registers, the monitoring of Title III wire intercepts, and the installation and monitoring of tracking devices for vehicles in relation to narcotics investigations. Further, I have been the affiant and obtained numerous Federal warrants for the cell phone data location of fugitives and subjects under investigation by the ATF and the Cincinnati Police Department. I

2

have testified as an expert regarding the drug distribution of drug traffickers in federal District Court in the Southern District of Ohio and the Hamilton County Court of Common Pleas Court, State of Ohio.

5.      In my experiences I have had the opportunity to monitor, listen, and review transcripts pertaining to communications which involved the trafficking of illegal narcotics by persons who attempted to thwart law enforcement by speaking in some sort of coded language.  I have also participated in numerous post arrest and proffer interviews of individuals with knowledge of illegal drug trafficking that had been involved in using coded language and were familiar with day-to-day operations utilized by those involved in the illegal trafficking of narcotics.  Through these interviews and other investigative experiences, I have gained knowledge regarding the various methods, techniques, codes, and/or jargon utilized by illegal drug traffickers in the course of conducting their criminal activities.

6.      In addition, I have used confidential informants, pen registers, toll records, physical surveillances, and electronic surveillances in the process of my investigations to further my knowledge regarding the operations of those involved in illegal narcotics distribution.  I have further been the affiant on Federal search warrants, have testified in Grand Jury proceedings, and have written reports during the course of conducting investigations.

7.      Through my training, experiences, and communications with other experienced agents and officers who conduct drug investigations, I have become familiar with methods used by drug traffickers to import, transport, store, collect, and safeguard illegal narcotics.  Additionally, my training and experiences have given me knowledge regarding the methods used by drug traffickers to communicate with each other, to launder drug proceeds, and to thwart efforts by law enforcement to detect their illegal activities.  I also have gained intelligence through my

experiences, and through conversations with others who have conducted drug-related investigations, regarding methods by which drug traffickers' package, prepare, and distribute narcotics.

8.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

9.      Based on the facts set forth in this affidavit, there is probable cause to believe Arik SMITH and other conspirators committed violations of 21 U.S.C. §§ 846 and 841(a)(1). There is also probable cause to believe that the information described in Attachment B will assist law enforcement in identifying other conspirators and crimes committed by the SMITH and other members of the MILLER Drug Trafficking Organization (MILLER DTO).

10.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

11.     The property to be searched is as follows (collectively the **SUBJECT DEVICE**), as further described in Attachment A:

    a.  A blue I Phone cellular device with a black case currently located at the ATF Cincinnati Field Office as item #000023.

12.     The **SUBJECT DEVICE** is currently being held in the evidence locker at the ATF Cincinnati Field Office, located at 550 Main Street, Cincinnati Ohio 45202.

4

13. The applied for warrant would authorize the forensic examination of the **SUBJECT DEVICE** for the purpose of identifying electronically stored data, particularly described in Attachment B.

## PROBABLE CAUSE

14. On October 8, 2021, Cincinnati Police Department (CPD) District Five Violent Crime Squad (VCS) executed a search warrant at 880 Lafayette Avenue #17 Cincinnati Ohio. Micheal MILLER and Markita STONE were arrested for drug trafficking offenses. District Five VCS officers identified additional members of the drug trafficking organization (DTO) led by Micheal MILLER who were not present during the execution of the search warrant. The search warrant was issued based on the facts that confidential and reliable informants (CI) contacted members of the DTO via phone calling 513-652-8303 to purchase narcotics. On October 25, 2021, members of the DTO that were not in custody were pursued by Cincinnati Police. Officers recovered cell phones abandoned in and near the pursuit vehicle. I prepared and executed search warrants on the cell phones. After examination of the phones recovered from the pursuit, I discovered one of the phones was the 513-652-8303 phone. District Five VCS officers monitoring Micheal MILLER's jail calls from the Hamilton County Justice Center (HCJC) learned that the DTO purchased a new phone and ported the 513-652-8303 number to the new device to stay in contact with established drug customers.

15. On November 1, 2021, Cincinnati Police Department (CPD) District Three Violent Crime Squad (VCS) officers met with a confidential and reliable informant (CI-1) for the purpose of making a call to Zion MILLER for the purchase of $40.00 of fentanyl. CI-1 called target on the 8303 phone and arranged to purchase fentanyl from MILLER at an unknown address. CI-1 has provided information regarding drug-related offenses to law enforcement in the recent past that

5

has proven reliable. CI-1 has previously been convicted of drug trafficking and theft and is cooperating for financial consideration. Police searched CI-1 and his/her vehicle for contraband and unauthorized currency and found nothing. CI-1 was issued $40.00 of recorded U.S. Currency and recording devices. During this time, officers established surveillance in the Westwood area. The target instructed CI-1 to get off on the Hopple Street exit. While under constant surveillance, and after multiple calls to Zion MILLER for updated directions, CI-1 drove to the designated meeting location, which was identified as 3298 Montana Avenue. CI-1 parked his/her vehicle in front of 3298 Montana Avenue and called Zion MILLER who instructed CI-1 to pull into the drive of 3298 Montana Avenue. Arik SMITH was observed standing on the driveway of 3298 Montana Avenue. Arik SMITH then walked back inside the residence and was observed exiting the rear of 3298 Montana Avenue and walked to the CI-1'S vehicle. There Arik SMITH gave CI-1 a quantity of fentanyl in exchange for U.S. Currency. Following the controlled buy and while under constant surveillance, officers followed CI-1 to a designated meeting location. Officers met with CI-1 and recovered the purchased fentanyl and the recording devices. Officers searched CI-1 for further contraband and /or unauthorized currency and found nothing. CI-1 identified Arik SMITH as the person who sold him/her the fentanyl from an Ohio Bureau of Motor Vehicles photograph. CI-1 stated SMITH walked out of the rear door of 3298 Montana Avenue, met CI-1 in the driveway, and walked back into the residence in the same rear door. SMITH then exited the residence again and walked to the driver's side of the CI-1's vehicle, SMITH then gave the CI-1 fentanyl through the driver's side window in exchange for $40.00. The fentanyl was tested at the Hamilton County Crime Laboratory and tested positive as fentanyl.

16.     On December 8, 2021, officers from the District Three Violent Crimes Squad executed a search warrant at 2383 Williamsburg Drive with the assistance of the Cincinnati Police SWAT

Team. During the execution of the search warrant, Zion MILLER fled out of the back door of the target location when told to stop by police and was taken into custody several addresses away. Zion MILLER had $9783 in U.S. currency on his person in pants pocket. Amongst the currency recovered was $20 that was used during a prior controlled buy with Zion MILLER the week of December 1, 2021.   CPD SWAT secured Marquise FOUNTAIN, Individual 1 (leaser of apartment), and Individual 2 in the residence. Inside of the apartment, officers recovered approximately 82 grams of fentanyl, 73 grams of methamphetamine, and 10 grams of crack cocaine. Officers also found evidence of drug trafficking such as blenders, digital scales, baggies, "cut" used to mix with the drugs, and several cell phones. Officers recovered a Glock model 17, 9mm serial number BKUE976 loaded with seventeen rounds and a stolen Glock model 21, .45 serial number SDG871 with fourteen rounds.  Both semiautomatic handguns were found in the kitchen near the recovered drugs and drug trafficking paraphernalia.  Officers recovered 3.758 grams of fentanyl from FOUNTAIN's person.

17.     While executing the search warrant, Markita STONE arrived at 2383 Williamsburg Drive in a vehicle.  Officers attempted to speak to STONE.  STONE was on the phone and advised the driver to leave the area without speaking to police.  Upon review of Michael MILLER's calls from the Hamilton County Justice Center officers discovered that STONE was on the phone with Michael MILLER.  Therefore, I believe that STONE was using cellular devices to communicate with Michael MILLER during jail calls. Officers also learned from jail calls that COSTON had arrived at 2383 Williamsburg Drive as the SWAT team was on scene and COSTON left the area. Michael MILLER called COSTON at from jail and told him to get the new phones from STONE. STONE confirmed with Michael MILLER that she has purchased the new phones ("lick phone

513-652-8303 and Zion MILLER's phone 513-773-6692) from Tina's Carryout store located in Over the Rhine.

18.     In a recorded call, STONE also contacted Arik SMITH on an additional line while on the phone with Michael MILLER. During this call, MILLER asked Arik SMITH if he can handle the phones and SMITH said that he can. Markita STONE delivered the new phones with the "lick phone" numbers re-ported to the new devices. STONE and Michael MILLER discussed talking on a different phone to avoid detection of law enforcement who maybe monitoring jail calls.

19.     On January 14, 2022, officers from Cincinnati Police District Three VCS met with CI-1 for the purpose of making a call to Arik SMITH for the purchase of $40.00 of fentanyl. CI-1 called SMITH at 513-652-8303 and arranged to purchase fentanyl from SMITH at an unknown address. Police searched CI-1 and his/her vehicle for contraband and unauthorized currency and found nothing. CI-1 was issued $40.00 of recorded U.S. Currency and recording devices. During this time, police established surveillance in the Westwood area. CI-1 was instructed to go to "Northside" (Northside Avenue and Grand Avenue), and that CI-1 would then receive further instruction on where to meet SMITH. SMITH later instructed CI-1 to go to "Montana" via text (3298 Montana Avenue). While under constant surveillance, CI-1 drove to the designated meeting location at 3298 Montana Avenue. CI-1 arrived and pulled his/her vehicle in front of the 3298 Montana Avenue. CI-1 called SMITH and advised he/she was there. CI-1 was then instructed to walk up the driveway of 3298 Montana Avenue and go to the rear door. Arik SMITH was observed opening the rear door at 3298 Montana Avenue, there Arik SMITH gave CI-1 a quantity of fentanyl in exchange for U.S Currency. While under constant surveillance, officers followed CI-1 back to a predesignated meeting location, met CI-1, and recovered the purchased fentanyl and the recording devices. Officers searched CI-1 for further contraband and /or unauthorized currency

8

and found nothing. CI-1 identified Arik SMITH as the person who sold him/her the fentanyl from an Ohio Bureau of Motor Vehicles photograph. CI-1 stated SMITH opened the rear door of 3298 Montana Avenue, he was in the kitchen with another unknown male, SMITH then gave CI-1 fentanyl through the opening of the door in exchange for $40.00. After the transaction was complete, CI-1 left the 3298 Montana Avenue. The fentanyl SMITH sold CI-1 was tested at the Hamilton County Crime Laboratory and tested positive as fentanyl.

20.     On January 21, 2022, officers from Cincinnati Police District Three VCS met with CI-1 for the purpose of making a call to Arik SMITH for the purchase of $40.00 of fentanyl. CI-1 called SMITH at 513-652-8303 phone number and arranged to purchase fentanyl from SMITH at an unknown address. Officers searched CI-1 and his/her vehicle for contraband and unauthorized currency and found nothing CI-1 was issued $40.00 of recorded U.S. Currency and recording devices. During this time, police established surveillance near the 3298 Montana Avenue. CI-1 was instructed to go to Montana Avenue. While under constant surveillance by officers, CI-1 parked on the street near 3298 Montana Avenue and walked up the driveway of the residence. CI-1 walked around the rear of the residence and knocked on the backdoor. An unknown subject answered the door and asked what CI-1 wanted. CI-1 told the unidentified subject what he/she wanted. The subject shut the door and returned a short time later and conducted the hand-to-hand drug transaction for fentanyl in exchange for U.S. Currency. While under constant surveillance, officers followed CI-1 back to a predesignated meeting location. Officers met with CI-1 and recovered the purchased fentanyl and the recording devices. Police searched CI-1 for further contraband and /or unauthorized currency and found nothing. The suspected fentanyl was taken to the Hamilton County Crime Laboratory and test results are pending.

21.     On January 26, 2022, United States Magistrate Judge Stephanie K. Bowman signed arrest warrants for five members of the MILLER DTO including Arik SMITH.   was charged, in a Superseding Indictment, with Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances in Southern District of Ohio Case Number 1:21-CR-122.

22.     On January 28, 2022, United States Magistrate Judge Stephanie K. Bowman reviewed and signed a search warrant for Arik SMITH's residence at 3298 Montana Avenue, Cincinnati Ohio, 45211.  ATF Special Agents, Task Force Officers, Cincinnati Gun Crime Intelligence Center (CGIC) Officers and the Cincinnati Police District Three Violent Crimes Squad (VCS) served and executed the search warrant for 3298 Montana Avenue, Cincinnati Ohio, on January 31, 2022, at 0624 hours.  Arik SMITH was taken into custody and arrested on his federal arrest warrant.

23.     During a search of 3298 Montana Avenue, law enforcement recovered approximately 20 grams of fentanyl, 7 grams of methamphetamine, and 2 grams of cocaine all packaged for sale from the kitchen of the residence.  Officers also recovered drug paraphernalia that included cutting agents, baggies, lottery tickets and a digital scale with residue that tested positive for fentanyl and cocaine from the kitchen.  Based on my training and experience, and participation in this investigation, I believe that the evidence seized from 3298 Montana Avenue is consistent with drug trafficking.  Law enforcement recovered a blue I Phone in a black case **(SUBJECT DEVICE)** from the bedroom.  The **(SUBJECT DEVICE)** was placed into ATF Property as item #000023.

24.     I learned during post arrest interviews that the phones used by the MILLER DTO were given to Arik SMITH for a short period of time.  Markita STONE and Arik SMITH admitted that the phones used to sell narcotics were taken from SMITH because he was not making enough money from drug sales.  SMITH admitted that the narcotics recovered in his residence were given to him by members of the MILLER DTO when they gave him the "lick or dope" phone.

25. Therefore, I believe there is probable cause that SMITH used **(SUBJECT DEVICE)** to communicate with co-conspirators to continue trafficking narcotics for the MILLER DTO. My belief is based on the fact I know SMITH did not have any other phones at the time of his arrest. SMITH stated in his interview he had been in contact with members of the DTO. Through the course of the investigation law enforcement discovered that SMITH was contacted by Micheal MILLER from the HCJC to discuss the use of phones for the DTO. The **(SUBJECT DEVICE)** is currently in the lawful possession of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and are currently in storage at the ATF Cincinnati Field Office. Located at 550 Main Street, Cincinnati Ohio 45202. In my training and experience, I know that the **(SUBJECT DEVICE)** has been stored in a way its contents are, to the extent material to this investigation, in substantially the same state as they were when the device first came in the possession of the ATF.

## TECHNICAL TERMS

26. Based on my training and experience, I use the following technical terms to convey the following meanings:

  a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone or cell phone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending,

receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

12

d.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

e.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

f.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another

13

location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

27. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at, https://www.apple.com/, know that the device has capabilities that allow it to serve as a cell phone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

14

Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

29.      *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

     a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

     b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

     c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

     d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge

15

about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

31. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

//

//

//

//

//

//

//

16

32.     Based upon the aforementioned facts and circumstances, I believe that there is probable

cause to believe that evidence of a crime, namely, violations of the statutes outlined in Attachment

B, exists and can be found in information contained on the **SUBJECT DEVICE**.

Respectfully submitted,

BRETT STRATMANN
Task Force Officer (TFO)
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on March ___ 21, 2022.
**via electronic means, specifically Facetime video.**

HON. STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

17

## **ATTACHMENT A**

The property to be searched is a blue iPhone cellular device with a black case currently located at

the ATF Cincinnati Field Office, 550 Main Street, Room 8-491 and is tagged as item #000023.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the

electronically stored information described in Attachment B.

1

## ATTACHMENT B

1.     All records on the **SUBJECT DEVICE** described in Attachment A that relate to violations of 21 U.S.C. §§ 846 and 841(a)(1) (Narcotics Conspiracy) involving Arik SMITH and other yet known and unknown individuals including:

   a.   Evidence that shows the **SUBJECT DEVICE** was used to further facilitate the distribution of illegal narcotics; lists of customers and related identifying information; types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   b.   any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   c.   any information recording schedules or travel;

   d.   any and all stored telephone numbers;

   e.   any and all text messages, to include incoming, outgoing, saved, deleted, and drafts;

   f.   Any and all emails, sent, received, delete, draft and/or saved;

   g.   any and all voicemails;

   h.   any and all photographs, electronic images, video recordings, and/or images saved and/or deleted on the cellular device;

   i.   Any and all data retrieved from Apps on the device;

   j.   any and all entries made in a calendar and/or notebook feature;

   k.   any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID, and or IMSI.

2.     Evidence of user attribution showing who used or owned the **SUBJECT**

1

**DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.